UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MID-CONTINENT       CASUALTY
COMPANY,      a       foreign
corporation,

       Plaintiff,

v.                                    Case No: 2:14-cv-35-FtM-29CM

HANSEN    HOMES    OF    SOUTH
FLORIDA,  INC.,  a  Florida
corporation,

       Defendant.

---

## OPINION AND ORDER

    This matter comes before the Court on the following motions: (1) Defendant's Second Motion for Judgment on the Pleadings (Doc. #32) filed on November 3, 2014 and Plaintiff's Response (Doc. #33) filed on November 20, 2014; and (2) Plaintiff's Motion for Partial Summary Judgment (Doc. #34) filed on November 21, 2014 and Defendant's Response and Cross-Motion for Summary Judgment (Doc. #38) filed on January 20, 2015.  For the reasons set forth below, Defendant's motions are denied and Plaintiff's motion is granted.

### I.

    This case involves a dispute between Plaintiff Mid-Continent Casualty Company (Mid-Continent) and Defendant Hansen Homes of South Florida, Inc. (Hansen) regarding the proper interpretation of insurance policies.  The relevant undisputed facts are as follows:

Between 2005 and 2009, Hansen installed Chinese drywall in homes it built in Cape Coral, Florida.  After the homes were completed, the homeowners sued Hansen for injuries that occurred as a result of the Chinese drywall.  During the same time period, Hansen purchased four insurance policies (the Policies) from Mid-Continent.  Pursuant to Policies, Mid-Continent defended the Chinese drywall claims on behalf of Hansen.  Mid-Continent settled a portion of the claims in November 2011.  The remaining federal claims were consolidated into a multidistrict litigation proceeding.  On March 15, 2013, the judge presiding over the multidistrict litigation approved a settlement (the MDL Settlement) of the consolidated claims.  In total, Mid-Continent paid in excess of $1.3 million to settle the Chinese drywall cases brought against Hansen.

Mid-Continent then sought to recoup from Hansen deductible payments for the settled claims.  Hansen disagreed that it owed deductibles and refused to pay.  As a result, Mid-Continent filed suit alleging that Hansen is in breach of the Policies.  Mid-Continent seeks (1) a declaratory judgment that Hansen owes deductible payments; and (2) damages for Hansen's alleged breach of contract.  In response, Hansen brought a counterclaim seeking a declaratory judgment that no deductibles are owed.  Both parties now move for partial summary judgment as to Hansen's obligation to pay deductibles for the claims resolved by the MDL Settlement.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## II.

As with all contracts, the interpretation of an insurance contract is a question of law to be decided by the Court.  Feaz v. Wells Fargo Bank, N.A., 745 F.3d 1098, 1104 (11th Cir. 2014); Vitas Healthcare Corp. v. Evanston Ins. Co., 303 F. App'x 856, 857 (11th Cir. 2008).  "Under Florida law, if the terms of an insurance contract are clear and unambiguous, a court must interpret the contract in accordance with its plain meaning, and, unless an ambiguity exists, a court should not resort to outside evidence or the complex rules of construction to construe the contract."  Key v. Allstate Ins. Co., 90 F.3d 1546, 1549 (11th Cir. 1996).

There are no material facts in dispute.  Both parties agree that the Policies are unambiguous.[1]  Both parties also agree that Mid-Continent resolved numerous Chinese drywall claims pursuant to the MDL Settlement.  The parties simply disagree as to whether the

---

[1] To be sure, the parties advance competing interpretations of the Policies.  However, "ambiguity does not exist simply because a contract requires interpretation . . . ."  Key v. Allstate Ins. Co., 90 F.3d 1546, 1549 (11th Cir. 1996).

Policies require Hansen to pay deductibles for those resolved claims.

The Policies include three categories of coverage: "bodily injury liability," "property damage liability," and "bodily injury liability and/or property damage liability combined." The Policies define "Bodily Injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Doc. #26-8, p. 24.) The Policies define "Property damage" to mean: "(a) Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that cause it; or (b) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it." (Id. at 26.)

The Policies also contain the following endorsement[2] which specifies the deductible applicable to each coverage category:

---

[2] This excerpt is taken from Policy No. 04-GL-000736013 (Doc. #26-8). With the exception of the *amount* of the "PER CLAIM" Property Damage Liability deductible, the other Policies are identical. The pending motions concern only the applicability of the deductible, not its amount. To avoid confusion, the Court will treat the Policies as identical for the purposes of the pending motions. Thus, any reference to a "$5,000 deductible" should be understood to mean "the deductible amount specified by the Policy applicable to the individual claim in question."

| SCHEDULE | | |
|---|---|---|
| **Coverage** | **Amount and Basis of Deductible** | |
| | **PER CLAIM** or | **PER OCCURRENCE** |
| Bodily Injury Liability | $ | $ |
| OR | | |
| Property Damage Liability | $      5000 | $ |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | $ |

(Doc. #26-8, p. 11.)   The Endorsement states:   "Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages."   (<u>Id.</u>)   The Endorsement further states that if the deductible amount is on a per claim basis, that deductible applies as follows:

    a.   Under Bodily Injury Liability Coverage, to all damages and allocated loss expenses sustained by any one person because of "bodily injury";

    b.   Under Property Damage Liability Coverage, to all damages and allocated loss expenses sustained by any one person because of "property damage"; or

    c.   Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined to all damages and allocated loss expenses sustained by any one person because of:

        (1)  "Bodily injury;"

        (2)  "Property damage;" or

        (3)  "Bodily injury" and "property damage" combined . . . ."

(<u>Id.</u> at 11-12.)

The Court finds no ambiguity in the Policies. The plain terms of the Policies require Hansen to pay a deductible of $5,000 for each claim involving "Property Damage Liability," but to pay no deductible for claims involving "Bodily Injury Liability" or claims involving "Bodily Injury Liability and/or Property Damage Liability Combined." The issue is whether the claims resolved by the MDL Settlement involved "Property Damage Liability" alone, and thus had the $5,000 deductible, or were "combined" claims.

The Policies do not specifically define "combined" property damage and bodily injury claims or liability. "It is well established that in construing terms appearing in insurance policies, Florida courts commonly adopt the plain meaning of words contained in legal and non-legal dictionaries." Cont'l Cas. Co. v. Wendt, 205 F.3d 1258, 1263 (11th Cir. 2000) (quotation omitted). Though the Eleventh Circuit does not appear to have addressed the issue, in U.S. Aviation Underwriters, Inc. v. Fitchburg-Leominster, Flying Club, Inc., the First Circuit stated that "combined liability coverage for bodily injury and property damage" was "merely an amalgam of the risks covered by the narrower categories . . . ." 42 F.3d 84, 85 n.2 (1st Cir. 1994). Likewise, the Court concludes that a "combined" claim is simply one that includes both property damage and bodily injury in the same claim. A claim which asserted only property damage is subject to the $5,000 deductible; a claim which asserted bodily injury damage

alone, or both bodily injury damage and property damage, is not subject to any deductible.

In pertinent part, the MDL Settlement places 95% of the settlement funds into a pool for "Repair and Relocation Damages." (Doc. #24-6.) The remaining 5% of the settlement funds is divided equally between pools for "Bodily Injury" damages and "Other Losses." (Id.) The parties agree that "Repair and Relocation Damages" fall under the Policies' coverage for property damage. Thus there is no dispute that the MDL Settlement triggered the Policies' coverage for both property damage and bodily injury. Indeed, as a result of the MDL Settlement, Mid-Continent obtained releases absolving it from further liability for both property damage and bodily injury. (Doc. #38-3, ¶ 10.) However, the MDL Settlement does not compensate the plaintiffs in the multidistrict litigation (the MDL Plaintiffs) via a lump sum. Instead, the MDL Settlement funds are allocated to separate pools for property damage, bodily injury, and other losses.

The MDL Settlement provides that MDL Plaintiffs may access the settlement funds in the three pools by filling out claims forms setting forth the pertinent details of their injuries. (Doc. #26-4.) Once all claims forms have been received, the funds in each pool are to be distributed to the MDL Plaintiffs according to a formula set forth in the MDL Settlement. (Id.) Each MDL Plaintiff must repeat this process for each pool, and the Special Master

tasked with allocating MDL Settlement funds makes independent
determinations for each pool. (Id.) For example, if an MDL
Plaintiff suffered both property damage and bodily injury, he must
make two claims: one to receive his share of the "Repair and
Relocation Damages" pool and one to receive his share of the
"Bodily Injury" pool. Those two claims are evaluated by the
Special Master independently. (Id.) Assuming both claims are
approved, the MDL Plaintiff's compensation for each claim is paid
from separate sources of funds. (Id.)

Applying the Policies to the MDL Settlement, the Court
concludes that the claims resolved by the MDL Settlement must be
analyzed independently for the purpose of determining whether
Hansen must pay a deductible. The fact that the MDL Settlement
resolves numerous claims at once does not mean that the claims
should be treated identically for the purposes of determining
Hansen's obligation to pay deductibles. To the contrary, the
claims are treated independently by the Special Master
administering the MDL Settlement and successful MDL Plaintiffs
will receive compensation directly traceable to a particular type,
or types, of damages.

Therefore, if an individual MDL Plaintiff was awarded
compensation solely via the MDL Settlement's Repair and Relocation
Damages pool, Hansen owes a $5,000 deductible for that claim. No
deductible is owed if an MDL Plaintiff was awarded compensation

via *both* the Repair and Relocation Damages pool *and* the Bodily Injury pool.  Likewise, no deductible is owed if an MDL Plaintiff was awarded compensation only from the Bodily Injury pool.  The case will now proceed to determine the amount of deductible payments Hansen owes and Mid-Continent's damages (if any) resulting from Hansen's failure to pay.

Accordingly, it is now

**ORDERED:**

1.    Defendant's Second Motion for Judgment on the Pleadings (Doc. #32) and Cross-Motion for Summary Judgment (Doc. #38) are **DENIED**.

2.    Plaintiff's Motion for Partial Summary Judgment (Doc. #34) is **GRANTED** as set forth herein pending determination of the remaining issues in the case.

**DONE AND ORDERED** at Fort Myers, Florida, this ___6th___ day of February, 2015.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies: Counsel of record